2024 IL App (1st) 231540-U

No. 1-23-1540

Order filed June 12, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| LAUNDIA FOSTER JR., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 3458 |
| | ) | |
| THE CITY OF CHICAGO, | ) | Honorable |
| | ) | Robert F. Harris, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant City of Chicago did not owe plaintiff a duty of care under the Local Governmental and Governmental Employees Tort Immunity Act because plaintiff was not an intended user of the roadway where he hit a pothole with his bicycle and sustained injuries.

¶ 2    Plaintiff Laundia Foster Jr. appeals from the circuit court's order granting summary judgment in favor of defendant the City of Chicago and dismissing with prejudice plaintiff's complaint for negligence. On appeal, plaintiff argues that the circuit court erred in granting

summary judgment to defendant because he was an intended user of the roadway at the time of his bicycle accident, so defendant owed him a duty of care to maintain the roadway. We affirm.[1]

¶ 3     The record on appeal lacks a report of proceedings. As such, the following facts are adduced from the common law record, which includes defendant's motion for summary judgment and exhibits.

¶ 4     On March 20, 2020, plaintiff filed a complaint against defendant, alleging negligence for failing to maintain the roadway in a safe condition on a stretch of Marquette Road in Chicago. Plaintiff alleged that on April 3, 2019, he was riding a bicycle eastbound on Marquette when he struck and fell into a pothole and sustained severe and permanent injuries.[2] Plaintiff sought $50,000 in damages.

¶ 5     On March 24, 2022, defendant filed a motion for summary judgment, arguing, *inter alia*, that plaintiff was a permitted but not intended user of the roadway because he rode his bicycle in the street instead of the marked bicycle lane at the time of the accident. Thus, defendant owed plaintiff no duty of care under the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1-101 *et seq*. (West 2018)).

¶ 6     Defendant attached, in relevant part, plaintiff's deposition taken March 14, 2022, wherein he testified that on April 3, 2019, he rode his bicycle in the marked bicycle lane. He left the bicycle lane at the intersection of Talman Avenue and Marquette due to a vehicle which stopped and

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2] For clarity, we have recharacterized plaintiff's allegations. The complaint alleged that plaintiff was "the driver of a motor vehicle" and a "motorist." But the record establishes he was riding a bicycle, not driving a motor vehicle, and that defendant treated the complaint accordingly, arguing in its motion for summary judgment that it owed no duty to plaintiff as a bicyclist.

parked in the bicycle lane. Plaintiff saw a woman leave the vehicle. He stopped two feet from the vehicle, checked for traffic, and then entered the roadway to pass the vehicle. Plaintiff traveled approximately "[t]hree pedals" before hitting a pothole. He broke his right leg, which required four surgeries, culminating in a partial amputation above the knee for which he wore a prosthetic.

¶ 7    Plaintiff acknowledged he was distracted as he started to go around the vehicle by the woman because "[s]he had a nice figure," and "so" his attention was drawn from the road. Plaintiff stated that he "could have" stopped and walked his bicycle around the vehicle.

¶ 8    Plaintiff described the condition of Marquette in that stretch as "[c]rappy" and he had seen a pothole there before the incident. Although he complained to defendant generally about potholes on the streets, he had not complained about that particular pothole. Plaintiff described the pothole to be "[h]alf a basketball deep" and approximately two feet wide and three feet long.

¶ 9    Plaintiff filed a response, arguing, *inter alia*, that he was an intended user of the roadway outside of the bicycle lane for the limited purpose of avoiding the parked vehicle obstructing the lane, and thus was owed a duty of reasonable care by defendant. Plaintiff contended that he should not be penalized for riding on the roadway to avoid a hazard in the bicycle lane, and the presence of a bicycle lane established that bicycle traffic was intended in the area.

¶ 10    Plaintiff attached, in relevant part, the May 5, 2022, deposition of David Smith, the Projects Administrator for the Chicago Department of Transportation. Smith testified that if an obstruction exists in the bicycle lane, a bicyclist may "go around the obstruction when it's safe and in a safe manner or wait until the obstruction is no longer there." Smith testified that a bicyclist is permitted to use the roadway or the parkway on the other side of the bicycle lane to pass obstacles if the lane is obstructed.

¶ 11    On July 3, 2023, the circuit court entered summary judgment in favor of defendant and dismissed plaintiff's complaint with prejudice.[3] The court found that plaintiff was a permitted user of the roadway, but not an intended user because there were no affirmative manifestations that defendant intended bicyclists to use the roadway where plaintiff's accident occurred. The court noted that plaintiff testified in his deposition that he had been using the bicycle lane prior to entering the traffic roadway where he encountered the pothole. The court found no genuine dispute of fact regarding whether plaintiff was an intended user of the roadway such that defendant owed him a duty of care.

¶ 12    On appeal, plaintiff contends that the circuit court erred in entering summary judgment because he was an intended user of the roadway outside of the bicycle lane for the limited purpose of avoiding an obstruction. Plaintiff contends that it was unreasonable for him to take any actions other than traveling on the roadway around the obstruction, and so he was an intended user of the roadway for the "exceptional" circumstance.

¶ 13    Summary judgment is appropriate where the pleadings, depositions, admissions on file, and affidavits show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). "Although a plaintiff is not required to prove his case at the summary judgment stage, in order to survive a motion for summary judgment, the nonmoving party must present a factual basis that would arguably entitle the party to a judgment." *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). We review the trial court's decision to grant summary judgment *de novo*, and construe all evidence in the record strictly

---

[3] In the same order, the circuit court also denied plaintiff's cross-motion for summary judgment. Neither party raises that judgment, and it is not at issue in the present appeal.

against the moving party and liberally in favor of the nonmoving party. *Seymour v. Collins*, 2015 IL 118432, ¶ 49.

¶ 14   Under the Act, "a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used." 745 ILCS 10/3-102(a) (West 2018). The plaintiff bears the burden to allege and prove all elements of a negligence claim premised upon the Act, including the defendant's duty, breach of that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Monson v. City of Danville*, 2018 IL 122486, ¶ 23. Here, the parties dispute only whether defendant owed plaintiff a duty of ordinary care.

¶ 15   The Act imposes a duty of ordinary care only for uses that are both permitted and intended. *Vaughn v. City of West Frankfort*, 166 Ill. 2d 155, 160 (1995). Thus, plaintiff must be both a permitted and intended user of the roadway where the accident occurred to survive summary judgment. See *Alave v. City of Chicago*, 2023 IL 128602, ¶ 39. "[A]n intended user of property is, by definition, also a permitted user; a permitted user of property, however, is not necessarily an intended user." *Boub v. Township of Wayne*, 183 Ill. 2d 520, 524 (1998).

¶ 16   The inquiry into whether the use of municipal property is an intended use under the Act is a multifactor analysis limited to the facts of each case. *Alave*, 2023 IL 128602, ¶ 40. Relevant factors for determining whether use of a municipal property is intended under the Act include the nature of the property itself and "affirmative manifestations such as signs, pavement markings, and other physical manifestations to show that the City intends—rather than merely permits—the roadway to be used in a certain manner." (Internal quotation marks and citations omitted). *Id.*

¶ 17    Under the Chicago Municipal Code, every bicyclist shall be granted all the rights and be subject to the same duties applicable to a driver of a vehicle except as explicitly provided or as to those laws and ordinances which by their nature have no application to bicyclists. Chicago Municipal Code § 9-52-010(a) (amended June 5, 2013). Further, "[t]he regulations in the traffic code applicable to bicycles shall apply whenever a bicycle is operated upon any roadway or public sidewalk or upon any public path set aside for the use of bicycles," subject to enumerated exceptions. Chicago Municipal Code § 9-52-010(b) (amended June 5, 2013).

¶ 18    Here, plaintiff has not established that he was an intended user of the roadway at the time of the accident. Specifically, plaintiff has not shown that the street included any signs, markings, or other affirmative manifestations establishing that defendant intended that the roadway be used by bicyclists. See *Alave*, 2023 IL 128602, ¶ 56. Indeed, the record establishes the opposite. A bicycle lane was marked beside the roadway, where defendant had been traveling prior to moving into the roadway to pass a parked vehicle. The presence of a bicycle lane establishes that plaintiff was an intended user of the bicycle lane rather than the roadway.

¶ 19    Plaintiff presented evidence from Smith, project administrator for defendant's department of transportation, that he was permitted to move into the roadway for the sole purpose of passing obstructions in the bicycle lane. But this evidence establishes only that plaintiff was a permitted user of the roadway at the time of the accident, not an intended user. Thus, as the relevant factors show that plaintiff was not an intended user of the roadway where he suffered his injury, defendant did not owe him a duty of care under the Act to maintain that roadway. See *Vaughn*, 166 Ill. 2d at 160.

¶ 20    Plaintiff contends that he was an intended user at the time of the accident due to the exceptional circumstances of the accident. Plaintiff argues that his sole viable option for passing the parked vehicle in the bicycle lane was to "move into the vehicular lane of traffic and re-enter the bike lane once past the parked vehicle." Plaintiff cites *Curatola v. Village of Niles*, 154 Ill. 2d 201 (1993), where the supreme court found that the Village of Niles had a duty to maintain the roadway surrounding a plaintiff's legally parked vehicle where the plaintiff sustained damages when he stepped from the rear of his vehicle and twisted his foot on a pothole. In *Curatola*, the supreme court found an exception to the rule that pedestrians are owed no duty when using the street outside of a crosswalk because the plaintiff sustained his injury while moving in the area immediately surrounding his parked vehicle, which was a necessary and intended use under the Act. *Id*. at 215-16. Plaintiff argues that the same principle of necessity should apply in his case.

¶ 21    We disagree. Although it was foreseeable that plaintiff could use the roadway to move around an obstacle in the bicycle lane, foreseeability alone does not establish defendant's intent that a bicyclist would use the roadway. See *Alave*, 2023 IL 128602, ¶¶ 93, 108 ("intended use is measured by the *City's* intent" and "[f]oreseeability alone *** is not the standard for determining whether a duty of care exists here" (emphasis in original and internal quotation marks omitted)). Further, the court in *Vaughn* outlined that the exception recognized in *Curatola* was "expressly limited" to situations where "it was *impossible* for the [plaintiff] to access" the destination without moving into the roadway. (Emphasis in original.) *Vaughn*, 166 Ill. 2d at 159-62. Here, the record contained evidence which established that circumventing the obstacle without entering the roadway was possible. As Smith testified, plaintiff could have passed the obstacle using the parkway or walked the bicycle around the obstacle, rather than ride in the road. Further, in his

deposition, plaintiff acknowledged that he could have stopped and walked his bicycle around the vehicle. Therefore, the limited exception established in *Curatola* does not apply.

¶ 22    In sum, there was no genuine issue of material fact regarding whether plaintiff was an intended user of the roadway where his bicycle hit the pothole; he was not. Plaintiff therefore could not meet his burden to establish that defendant owed him a duty of care under the Act to maintain that roadway. The circuit court properly granted defendant's motion for summary judgment on that basis. See 735 ILCS 5/2-1005(c) (West 2020). Accordingly, we affirm the circuit court's judgment.

¶ 23    Affirmed.